UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LEADER CAPITAL CORP,

               Plaintiff,

   v.

FNEX CAPITAL LLC et al.,

               Defendant.

CASE NO. 3:25-cv-05001-BHS

ORDER

This matter is before the Court on defendants FNEX and Maverick's[1] motion to dismiss plaintiff Leader Capital's claims, Dkt. 29, and Leader Capital's motion to dismiss defendants' counterclaims, Dkt. 52.

Leader Capital is an investment advisor registered with the Securities and Exchange Commission (SEC). FNEX is a broker-dealer that facilitates sales and marketing for mutual funds. Dkt. 21 at 3. In November 2023, Leader Capital engaged FNEX to provide sales and marketing services for Leader Capital's mutual fund products.

---

[1] The Court uses the singular "FNEX" to refer to defendants.

The sales agreement required Leader Capital to pay FNEX a 0.20% commission on its monthly sales, unless the trade was designated from a "House Account." Dkt. 21-1 at 3, 9–10. Leader Capital represented and warranted that the funds were registered with the SEC and there were "no material adverse changes to the [f]unds since the filing of their registration statement." *Id.* at 5–6. The parties were to "keep confidential all information concerning the financial affairs and matters of the other and their clients and . . . not reproduce or distribute the same." *Id.* at 7–8. Finally, the agreement excluded liability for incidental, consequential, indirect, special, or punitive damages. *Id.* at 4. Delaware law applies to the agreement. *Id.* at 8.

Leader Capital terminated the sales agreement in August 2024. Leader Capital alleges FNEX subsequently falsely told investors that Leader Capital was under SEC investigation, trading outside of its prospectus, and that its leadership "were bad guys." *Id.* at 4–5. Leader Capital asserts the SEC examination was routine, "not because of any alleged wrongdoing," and by omitting that information, FNEX gave the "false impression that Leader Capital had violated federal securities laws." *Id.* at 6. Leader Capital claims investors withdrew significant investments from Leader Capital's mutual fund because of FNEX's misrepresentations. *Id.* at 5–6.

In November 2024, Leader Funds Trust, the owner of the funds[2], announced to the SEC that overvaluation of certain securities had a "material impact" on the net asset value

---

[2] The Trust is not a party.

1   ("NAV") for at least one of the funds "from February 22, 2022 through August 14,

2   2024." Dkt. 39, Ex. A at 34, 38–39, 45, 48.

3          In January 2025, Leader Capital sued FNEX for breach of contract, breach of the

4   implied duty of good faith and fair dealing, defamation, intentional interference with

5   contractual relations, and intentional interference with prospective economic relations.

6   Dkts.1 and 21.[3]

7          FNEX asserts as counterclaims breach of contract and breach of the implied duty

8   of good faith and fair dealing. Dkt. 48 at 14–16. It alleges Leader Capital owes FNEX

9   $15,064 in commission for a sale FNEX secured before the contract ended and that the

10  NAV error constituted a breach of Leader Capital's representations to it. *Id.* at 12, 14. It

11  asserts the NAV error rendered Leader Capital's marketing information inaccurate, which

12  FNEX then had to correct. *Id.* at 11. FNEX also seeks declaratory judgment that its

13  disclosure of a publicly filed annual report is not a breach of the contract's confidentiality

14  provision. *Id.* at 16. Finally, FNEX asserted, and later voluntarily dismissed, an abuse of

15  process counterclaim. Dkt. 57.

16         FNEX moves to dismiss Leader Capital's breach of contract, breach of the implied

17  duty of good faith and fair dealing, and intentional interference claims, arguing they are

18  insufficiently pled. Dkt. 29 at 7. It does not challenge the defamation claim. Dkt. 29 at 19

19  n.6.

20

21  _____

    [3] Leader Capital also asserted a securities fraud claim, which it has voluntarily dismissed.
22  Dkt. 36 at 1.

1    Leader Capital moves to dismiss FNEX's breach of the implied duty of good faith

2    and fair dealing and non-commission damages counterclaims. Dkt. 52. It argues the sales

3    agreement precludes damages other than sales commissions. Leader Capital also moved

4    to dismiss the abuse of process counterclaim before FNEX's voluntary dismissal. Dkt. 53

5    (citing RCW 4.105.010). It asks the Court to address its motion nonetheless. Dkt. 59

6    (citing RCW 4.105.060).

7    The issues are addressed in turn.

8    **I.    DISCUSSION**

9    Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either

10    the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

11    cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

12    1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible

13    on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility"

14    when the party seeking relief "pleads factual content that allows the court to draw the

15    reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although

16    courts must accept as true the complaint's well-pled facts, conclusory allegations of law

17    and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to

18    dismiss. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v.*

19    *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to

20    provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

21    conclusions, and a formulaic recitation of the elements of a cause of action will not do.

22    Factual allegations must be enough to raise a right to relief above the speculative level."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The Court's review is "limited to the complaint, materials incorporated into the complaint by reference, and matters of which the Court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

When granting a Rule 12(b)(6) motion to dismiss, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, when the facts are not in dispute and the sole issue is whether there is liability as a matter of substantive law, courts may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

Leave to amend a complaint under FRCP 15(a) "shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). This policy is "to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation omitted). In determining whether to grant leave under Rule 15, courts consider five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). Among these factors, prejudice to the opposing party carries the greatest weight. *Eminence Cap.*, 316 F.3d at 1052.

1    **A.    Leader Capital's contractual claims are not plausible.**

2        Leader Capital claims FNEX breached the contract's confidentiality provision by

3    "disclosing information relating to Leader Capital's financial matters" and seeks at least

4    $3.56 million in resulting damages. Dkt. 21 at 8. It also claims FNEX breached its

5    implied obligation to act "reasonably and in good faith in its performances under the

6    Sales Agreement, and not to frustrate the benefit Leader Capital reasonably expected to

7    obtain from the Sales Agreement." *Id.* at 9. FNEX argues both allegations are

8    insufficiently pled. Dkt. 29 at 18–24.

9        In Delaware, a breach of contract claim requires the plaintiff to demonstrate the

10    existence of the contract, the breach of an obligation imposed by that contract, and "the

11    resultant damage to the plaintiff." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 883

12    (Del. Ch. 2009). The plaintiff must show that the damages are "provable to a reasonable

13    certainty, and that these damages flowed from defendant's violation of the contract."

14    *LaPoint v. AmerisourceBergen Corp.*, 2007 WL 2565709, at *9 (Del. Ch. 2007). *See*

15    *Moody v. Nationwide Mut. Ins. Co.*, 549 A.2d 291, 293 (Del. 1988) (there must be "some

16    reasonable basis for the [fact finder] to estimate with a fair degree of certainty [the

17    plaintiff's] probable loss."); *eCommerce Indus., Inc. v. MWA Intel., Inc.*, 2013 WL

18    5621678, at *42 (Del. Ch. 2013) ("Responsible estimates of damages that lack

19    mathematical certainty are permissible so long as the court has a basis to make such

20    estimates.").

21        Leader Capital does not sufficiently allege FNEX breached the contract. The

22    complaint merely asserts FNEX disclosed "information relating to . . . financial matters."

1    Dkt. 21 at 8. In its response to FNEX's motion to dismiss, Leader Capital offers the SEC

2    examination as an example of the disclosed "information." Dkt. 36 at 7. However, the

3    complaint does not assert, and Leader Capital does not argue, that the examination was

4    confidential or non-public.[4] *See Martin Marietta Materials, Inc. v. Vulcan Materials Co.*,

5    68 A.3d 1208, 1219 (Del. 2012) ("A confidentiality agreement is intended to protect a

6    contracting party's non-public information.").

7        The implied covenant of good faith and fair dealing "inheres in every contract and

8    requires a party in a contractual relationship to refrain from arbitrary or unreasonable

9    conduct which has the effect of preventing the other party to the contract from receiving

10   the fruits of the bargain." *Kuroda*, 971 A.2d at 888 (citation modified). It infers contract

11   terms where there are "developments or contractual gaps that the asserting party pleads

12   neither party anticipated" to ensure the parties' reasonable expectations are fulfilled.

13   *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010); *Kuroda*, 971 A.2d at 888. The

14   plaintiff must "allege a specific implied contractual obligation, a breach of that

15   obligation, and resulting damage." *Id.* (citing *Fitzgerald v. Cantor,* 1998 WL 842316, at

16   *1 (Del. Ch. 1998)). The duty is not "free floating," and "[g]eneral allegations of bad

17   faith conduct are not sufficient." *Id.* It is a "limited and extraordinary legal remedy."

18   *Oxbow Carbon & Min. Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d

19   482, 507 (Del. 2019) (citation modified).

20

21       [4] The contract does not define "confidential," so the Court gives the term its plain and
     ordinary meaning. *See Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del.
22   2006).

1   Leader Capital's alleges FNEX had an implied obligation to "act reasonably and in

2   good faith," and "not to frustrate the benefit" of the agreement. Dkt. 21 at 9. Such a

3   general, "free floating" implied duty falls short of the "specific implied contractual

4   obligation" required to plausibly plead a breach of contract. *Kuroda*, 921 A.2d at 888.

5   Leader Capital's briefing argues FNEX violated an implied contractual duty when FNEX

6   used Leader Capital's allegedly confidential information to "persuade investors . . . to

7   withdraw their investments from the funds." Dkt. 36 at 11–12. The contract's

8   confidentiality provision covers such conduct, rendering the implied covenant

9   inapplicable here. *See Oxbow*, 202 A.3d at 507 (citation modified) ("the implied covenant

10  does not apply when the contract addresses the conduct at issue, but only when the

11  contract is truly silent concerning the matter at hand."). Even so, as the Court concluded

12  above, Leader Capital has not sufficiently pled that FNEX disclosed any confidential

13  information.

14       Finally, Leader Capital again does not explain how or why FNEX's alleged

15  misconduct resulted in $3.56 million in damages. Dkt. 21 at 9. It unpersuasively argues it

16  "need not plead or prove a specific amount of monetary damages, as there are various

17  remedies available to the plaintiff." Dkt. 36 at 6–7 (citing *eCommerce Indus.,* 2013 WL

18  5621678, at *13). While Delaware permits plaintiffs to estimate their damages, there

19  must still be a reasonable basis for its requested amount. It is not enough to simply claim

20  $3.56 million in damages.

21

22

Leader Capital fails to plausibly plead its breach of contract and breach of implied duty of good faith and fair dealing claims. FNEX's motion to dismiss Leader Capital's contractual claims is **GRANTED**.

Leader Capital may **amend** the complaint, however, to address these deficiencies. Allowing amendment would not prejudice FNEX, and there is no claim or evidence of bad faith or undue delay. *Corinthian Colls.*, 655 F.3d at 995.

**B.    Leader Capital's intentional interference claims are not plausible.**

Leader Capital claims FNEX's intentional misrepresentations caused investors to withdraw investments from the funds, intentionally interfering with Leader Capital's existing and prospective business relations. Dkt. 21 at 9–10. FNEX argues the claims are insufficiently pled, arguing that Leader Capital simply repeats "the same deficiencies in the other counts," fails to allege "what business relationship it has (if any) with investors in the Trust" and how it has been or will be damaged by the withdrawn investments. Dkt. 29 at 24–27.

Washington[5] recognizes the tort of intentional interference with a contractual relationship or business expectancy. *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wn.2d 133, 157 (1997). To succeed on an intentional interference claim, the plaintiff must prove "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference

---

[5] The parties seem to agree that Washington law applies to Leader Capital's tort claims. Dkt. 29 at 25; Dkt. 36 at 12. *See Tilden-Coil Constructors, Inc. v. Landmark Am. Ins. Co.*, 721 F. Supp. 2d 1007, 1016 (W.D. Wash. 2010) (Under Washington choice of law rules, the Court looks to the state with the most significant relationship to the occurrence and the parties.).

1    inducing or causing a breach or termination of the relationship or expectancy; (4) that

2    defendants interfered for an improper purpose or used improper means; and (5) resultant

3    damage." *Id.*

4        Leader Capital does not sufficiently allege a valid contractual relationship or

5    business expectancy. Its argument that "shares in a mutual fund are . . . 'contracts'" is not

6    well taken. Dkt. 36 at 13–14. A share is more akin to a property interest than a contract.

7    *See In re Marriage of Langham and Kolde*, 153 Wn.2d 553, 566 (2005) ("[W]e hold that

8    stock options are property."). Moreover, the mutual funds are owned by the Trust, not

9    Leader Capital. The complaint lacks any detail on the investors' existing or prospective

10   relationships with Leader Capital.

11       Leader Capital does not plausibly allege intentional interference with a contract or

12   business expectancy. FNEX's motion to dismiss the intentional interference claims is

13   **GRANTED**.

14       Leader Capital may **amend** the complaint, however, to address these deficiencies.

15   Allowing amendment here would not prejudice FNEX, and there is no claim or evidence

16   of bad faith or undue delay. *Corinthian Colls.*, 655 F.3d at 995.

17   **C.    FNEX's counterclaim for damages incurred by the NAV error is plausible.**

18       FNEX asserts a breach of contract counterclaim, alleging Leader Capital breached

19   its express warranty that "[t]here have been no material adverse changes to the [f]unds

20   since the filing of their registration statement" in incurring the NAV error. Dkt. 48 at 14–

21   15 (quoting Dkt. 21-1 at 6). It claims it "incurred costs and fees associated with

22   informing its customers regarding material error concerning NAV of shares." *Id.* at 15.

1   Leader Capital argues the sales agreement precludes recovery of such consequential

2   damages. Dkt. 52 at 8–9. FNEX agrees the agreement bars consequential damages, but

3   contends the cost and fees associated with informing customers are direct damages

4   because they flow directly and immediately from Leader Capital's warranty breach. Dkt.

5   58 at 4–5. Alternatively, FNEX argues it is "premature at the pleadings stage" to dismiss

6   its request for damages. *Id.* at 7 (citing *J.A. Jones Const. Co. v. City of Dover*, 372 A.2d

7   540, 553 (Del. Super. Ct. 1977).

8        Direct damages are "inherent in the breach," the "necessary and usual result of the

9   defendant's wrongful act," and "flow naturally and necessarily from the wrong."

10  *Bonanza Restaurant Co. v. Wink*, 2012 WL 1415512, at *3 (Del. Super. Ct. 2012).

11  Consequential damages, on the other hand, "result naturally but not necessarily from the

12  wrongful act, because they require the existence of some other contract or relationship."

13  *Id.* Consequential damages are recoverable only if they are "foreseeable and traceable to

14  the wrongful act and result from it." *Id.*

15       FNEX's claimed damages arise directly and necessarily from the NAV error. It

16  incurred costs and fees in informing customers "who may have subscribed to the Funds"

17  of the material error. Dkt. 48 at 11. There is no contract or relationship beyond the sales

18  agreement at issue here. *Bonanza*, 2012 WL1415512, at *3. Absent Leader Capital's

19  breach of its warranty, FNEX would not have communicated the NAV error to

20  customers. Its alleged damages are the direct result of Leader Capital's alleged breach of

21  contract.

22

The contract does not bar FNEX's direct damages claimed in connection to the NAV error. Leader Capital's motion to dismiss this counterclaim is **DENIED**.

**D.    FNEX's breach of the implied duty of good faith and fair dealing counterclaim is not plausible.**

FNEX alleges Leader Capital breached its implied duty to provide FNEX "marketing information free from material error" and provide "accurate factual information regarding the [f]unds . . . on a continued basis." Dkt. 48 at 15. Leader Capital contends FNEX's alleged damages are implausible because Leader Capital "publicly remedied the error by . . . reimbursing the fund." Dkt. 52 at 10.

As discussed above with respect to Leader Capital's claim, the implied covenant of good faith and fair dealing claim allows the Court to infer contract terms to "ensure the parties' reasonable expectations are fulfilled." *Kuroda*, 971 A.2d at 888 (citation modified). A claim invoking the implied covenant must allege "a specific implied contractual obligation and . . . how the violation of that obligation denied the plaintiff the fruits of the contract." *Id.*

FNEX has not sufficiently pled that it was injured by Leader Capital's alleged violation of the implied covenant. FNEX asserts it incurred costs and fees in correcting the inaccurate information, but fails to articulate "a contractual benefit [it] was denied as a result." *Kuroda*, 971 A.2d at 887. Its counterclaim is conclusory.

Leader Capital's motion to dismiss FNEX's breach of the implied duty of good faith and fair dealing claim is **GRANTED**.

FNEX may **amend** its counterclaim, however, to address these deficiencies. Allowing amendment here would not prejudice Leader Capital, and there is no claim or evidence of bad faith or undue delay. *Corinthian Colls.*, 655 F.3d at 995.

**E.    The Court will not rule on Leader Capital's motion to dismiss FNEX's abuse of process counterclaim.**

FNEX initially asserted an abuse of process counterclaim, alleging Leader Capital "improperly used legal process by filing a securities fraud claim knowing it to be baseless." Dkt. 48 at 13–14. Leader Capital dismissed its securities fraud claim, Dkt. 36 at 1, and later moved to dismiss FNEX's abuse of process counterclaim under Washington's "anti-SLAPP" statute[6], Dkt. 53. FNEX subsequently dismissed its abuse of process claim. Dkt. 57.

Leader Capital insists the Court still rule on its motion to dismiss the abuse of process claim, Dkt. 53, arguing it is entitled to a ruling notwithstanding FNEX's voluntary dismissal of the counterclaim. Dkt. 59 (citing RCW 4.105.060(2)).

RCW 4.105.060(2) provides, "A voluntary dismissal without prejudice of a responding party's cause of action . . . that is the subject of" an anti-SLAPP motion "does not affect a moving party's right to obtain a ruling on the motion."

FNEX's counterclaim was predicated on Leader Capital's securities fraud claim. When Leader Capital voluntarily dismissed its claim, FNEX did the same. There is no longer an underlying communication in a judicial proceeding at issue here. The Court

---

[6] The Uniform Public Expression Protection Act constitutes Washington's anti-SLAPP (strategic lawsuit against public participation) statute. RCW Chapter 4.105.

1  will not rule on Leader Capital's motion to dismiss FNEX's abuse of process

2  counterclaim.

## II.   ORDER

Leader Capital has not sufficiently pled its breach of contract, breach of the implied duty of good faith and fair dealing, and intentional interference claims. FNEX's motion to dismiss these claims is **GRANTED**. FNEX has not sufficiently pled its breach of the implied duty of good faith and fair dealing counterclaim. Leader Capital's motion to dismiss this claim is **GRANTED**. These claims are **DISMISSED without prejudice** and **with leave to amend**. Any amended complaint must be filed within 21 days of this Order, and any amended answer must be filed within 14 days thereafter.

FNEX's damages counterclaim for the costs and fees incurred in informing customers of the NAV error is plausible. Leader Capital's motion to dismiss on that claim is **DENIED**.

IT IS SO ORDERED.

Dated this 16th day of January, 2026.

_____

BENJAMIN H. SETTLE
United States District Judge